THOMAS A. JENCKES, Administrator *vs.* DARIUS GOFFE.

A made a mortgage to B of " a machine shop and the steam engine, boilers and all other tools, stock and property of every name and description in said machine shop," which mortgage was duly recorded, and A remaining in possession and continuing the business sold an engine covered by the mortgage, *held*, that the purchaser's title to said engine was void as to B, unless B had given A an authority to sell, either express or implied ; that such authority, in the absence of fraud, depends on the intent of the parties ; this intent may be inferred from the circumstances above stated, but the inference is to be drawn by the jury as a fact, and the Court ought not to instruct the jury that, if they find the circumstances, they are bound in the absence of contradictory testimony to find the authority.

An unfinished engine having been mortgaged and subsequently finished by the mortgagor out of materials also covered by the mortgage, *held*, that the mortgagee was entitled to the additional value derived from said materials and the labor of the mortgagor.

TROVER, for the value of a steam engine. Plea—the general issue. The action was brought by the plaintiff as Administrator of Launcellot Mitchell. It appeared in evidence, that on the 12th of April, 1847, Launcellot Mitchell and William Blake, previously in company as machinists, dissolved their co-partnership, and to secure Mitchell the value of his part of the partnership property, Blake gave him a mortgage of the machine shop, " and the steam engine, boilers and all other tools, stock and property of every name and description in said machine shop," said Blake being left in possession and continuing the business. The mortgage was duly recorded. The engine, for the value of which this action was brought,

was, by the plaintiff's evidence, in the shop at the date of the mortgage and was subsequently sold to the defendant. John Whitlet, one of the plaintiff's witnesses, testified that he was in the employ of Blake & Mitchell, previous to the dissolution, and that they built an engine, (alleged to be the engine in question,) and that said engine was in process of building from the first of January, 1847, to the first of May, 1847, and stood in the shop when the partnership was dissolved. That he, the witness, afterwards set the engine up in Mr. Allen's saw mill in Providence, where it was run about three months, when it stood idle for sometime until it was sold by Baker, (Blake's agent, after his dissolution with Mitchell,) to the defendant. Another witness testified that the engine was not entirely completed until about the time it was sold to the defendant. It also appeared that there were several other engines made or finished, after the dissolution of Blake & Mitchell, and sold to different persons. The defendant put in evidence to show that there were other engines at the shop, for one of which this had been mistaken ; and further, that admitting this to be the engine to which the plaintiff's proof applied, it was not commenced, or, if commenced, not completed until after the date of the mortgage.

The defendant's counsel contended, at the trial, that if the mortgage, at the time it was made, only covered the stock, it would not cover an engine subsequently manufactured out of the stock, this being subsequently acquired property to which the mortgage would not attach ; and, further, that the mortgagor being left in possession in such circumstances as evinced an intent that he should continue to manufacture and sell the stock, his sales could not be avoided by the mortgagee.

The Court charged the jury—

This is an action of trover to recover the value of a steam engine. The plaintiff claims under a mortgage, and, to entitle him to recover, must prove that this engine was among the articles covered by the mortgage. The defendant says it was not. This is a question of fact for you to determine. There are other grounds of defence, which depend upon the construction of the statute in regard to the registry of mortgages of personal property. The construction of this act involves questions of great delicacy and importance. Previous to this act, the mortgagor was left in possession of the mortgaged property, and might sell it to a *bona fide* purchaser, without revealing the mortgage, and yet would only give a title voidable by the mortgagee. There were, indeed, decisions making delivery an essential part of a sale of personal property, but these did not extend to mortgages. Consequently, purchasers were often defrauded, and, though dealing with the ostensible owner, could never be sure of acquiring a valid title. To remedy this, the General Assembly passed a law in 1834, providing that mortgages of personal property should be registered in the town where the mortgagor resided. This act authorized the mortgagor to remain in possession and made the record notice or equivalent to a delivery, so that a purchaser of the mortgaged property took it subject to the claim of the mortgagee. Thus, a manufacturer purchases a mill, but being unable to pay the whole price, gives a mortgage for the part unpaid, upon the machinery. This mortgage is recorded where the mortgagor resides. If any one purchases that machinery of the mortgagor, he purchases it subject to the mortgage, notwithstanding the mortgagor is left in possession. But

it is contended that, where the mortgagor is left in possession, and for the purpose of manufacturing and selling the mortgaged property, these circumstances show an implied authority to sell from the mortgagee, and he cannot, afterwards, come in and avoid the title of a *bona fide* purchaser. The construction of the registry law in this respect, requires careful consideration. Take the case of a dry goods dealer. He purchases a stock of goods and gives a mortgage on it for the purchase money. The object of the mortgage is to enable him to go on with his business. Is a purchaser to be liable in trover. Or, take any other case in which selling the mortgaged property is a part of the business intended to be carried on. When the property is left merely for use, the case is different; for in such case you cannot from possession, imply an intent to authorize a sale. We charge, therefore, if the evidence satisfies you, that the mortgagor had authority, either express or implied by the circumstances, to make and sell machines, the defendant has a good title. The possession being intended for the purpose of selling, the mortgagee cannot annul the sale. In this case, if the plaintiff intended that Blake should sell this engine, or if the circumstances are such that this is the presumable intent, the sale is valid. If such was not the intent, the sale is not valid.

If the engine was not made at the date of the mortgage, yet, if the intent of the parties was that 'the mortgaged materials should be manufactured and sold, the mortgagee is bound by the sale. But if this was contrary to his intent, he is not bound. But if you find that the mortgagor had no authority to manufacture and sell, and further find that the engine, or the materials out of which it was made, was covered by the mortgage, you will re-

turn a verdict for the plaintiff for the value of the engine with interest from the date of sale.

The jury returned a verdict for the plaintiff, and BRADLEY, of counsel for the defendant, moved for a new trial, and as the grounds of his motion, alleged the following ; to wit :

1st. Because the verdict was against the evidence.

2d. Because he hath discovered new and further evidence, material to said case, which was unknown at the time of the trial.

3d. Because the rules of law authorize a purchaser for valuable consideration in the ordinary course of trade and business, without actual notice of an existing record mortgage, to buy and hold personal property from the mortgagor thereof, when the same has been left by the mortgagee in his possession, and is from its nature and the circumstances under which it is left, allowed to be sold by him ; and that such conduct by the mortgagee is an authority to the mortgagor to sell to such purchaser, and the title thus acquired cannot be impeached by the mortgagee. Or, that such facts are *prima facie* evidence of such authority and conclusive in the absence of contradictory evidence. These facts existed in the case at bar, and the jury were instructed that they might find such authority from these facts, and were not instructed that these facts constituted a conclusive or *prima facie* evidence of such authority.

4. Because the jury allowed the full value of said steam engine, whereas a portion of the value was added thereto, after the date of the mortgage. And the Court, it is believed, declined to instruct the jury to the contrary.

Thomas A. Jenckes, Administrator *vs.* Darius Goffe.

JENCKES, for the plaintiff, contended. The primary object of a mortgage is the security of the mortgage debt. The primary obligation of the mortgagor is to do nothing to impair this security. The mortgagor always retains a right to sell subject to the mortgage, but to infer a power to sell so as to defeat the security—as by sale of the chattels themselves—from the fact that the mortgage was of saleable chattels only, would be to infer precisely the opposite of the intention of the parties in taking and giving the security. It would annul the statute altogether. Power of sale supposes a new relation between the parties, that of principal and agent—owner and factor—entirely distinct from and in some respects inconsistent with their position as mortgagor and mortgagee. This relation must be proved *aliunde.* The same, if not an additional degree of strictness, should be required here as in all other cases of a proof of an agency to sell. The mortgagee admits that such power may be implied from circumstances, such as the kind of articles mortgaged, in connection with proof of acts of sale by mortgagor with mortgagee's knowledge, verbal permission, &c., and, also, admits that the case was properly left to the jury to imply such power from other circumstances than an express authority. Of course, the nature of the business will be proper to be considered, but to determine the nature of any business there must first be ascertained the kind of property, the position of it and of the parties and their acts and declarations relative to it. And these were the matters left to the jury for them to ascertain another fact, that is, whether an authority to sell had been given.

GREENE, C. J., delivered the opinion of the Court. Embarrassing questions may arise under this Registry Law, where the sale is made by the mortgagor, left in possession of the mortgaged property by the mortgagee.

To uphold the sale, there must be some agency or authority in the mortgagor from the mortgagee, express or implied. If the possession be continued with the mortgagor for the purpose of sale, then the mortgagee ought to be bound, but if the possession be for use merely, then the mortgagee would not be bound.

The object of the statute is to compel the mortgagee to take possession of the mortgaged property or put his mortgage on record, and thus give authentic notice of its existence. The mere possession of the mortgagor is no evidence of authority to sell ; such a construction would defeat the security of the mortgagee. The statute contemplates a possession by the mortgagor and protects a purchaser by requiring a record of the mortgage.

But if the property is left in the possession of the mortgagor for the purpose of sale, then the mortgagor is the agent of the mortgagee for that purpose. In the absence of fraud, the effect of the possession depends on the intent of the parties ; that intent is a question of fact. It may be inferred from circumstances such as are relied upon in the present case, but such inference is to be drawn by the jury, and the Court ought not to instruct the jury that if they find the circumstances, they are bound in the absence of contradictory testimony to find the authority and intent.

This question was left to the jury with proper instructions and after a careful consideration, we do not think the charge erroneous.

Thomas A. Jenckes, Administrator *vs.* Darius Goffe.

No request to charge in conformity to the ground taken in the petition for new trial was made at the time of the trial, and if there had been, we do not think we could have legally complied with it.

If the mortgagee should knowingly permit the mortgagor to hold out delusive appearances of authority to sell, and thereby deceive a *bona fide* purchaser, he would be bound. But the case at law was not put on the ground of fraud.

With regard to the fourth ground stated in the petition, we think if the materials used in finishing the machine were embraced by the mortgage, the mortgagee is entitled to the additional value derived from the materials as well as from the labor of the mortgagor.

We see no reason to set aside the verdict upon the other grounds on which a new trial is asked.

New trial denied.